**In re Vernon Eugene WRIGHT, Irintha Carol Smith, Debtors.**

No. 02–40886–13.

United States Bankruptcy Court, D. Kansas.

July 18, 2003.

Michael F. Brunton, Topeka, KS, for debtors.

Laquita Taylor–Phillips, U.S. Department of Justice, Tax Division, Washington, D.C., David D. Plinsky, Office of United States Attorney, Topeka, KS for creditors.

Jan Hamilton, Topeka, KS, Chapter 13 Trustee.

### SECOND ORDER CONCERNING INTERNAL REVENUE SERVICE LIENS

JANICE MILLER KARLIN, Bankruptcy Judge.

On February 27, 2003, Judge Pusateri entered a non-final Order Concerning Internal Revenue Service Liens (Doc. No. 44), which stated that the Internal Revenue Service could not enforce its liens on the personal property in question by way of an administrative levy under 26 U.S.C. § 6331,[1] because of the provisions of 26 U.S.C. § 6334. IRC 6334 bars the IRS from administratively levying against certain carefully itemized property. As a result of that conclusion, Judge Pusateri asked the parties to attempt to value the liens on the property.

Since that time, the parties have been unable to stipulate to value, and the property has apparently been inspected or appraised by the IRS. The parties also dispute whether the present fair market value of the property is the proper indicia of value, or whether, as Debtors argue, the property has only a "$1.00 or nominal value" because the lien in question "cannot be enforced."

In preparing for the hearing scheduled for July 30, 2003, which deals with this valuation issue, this Court has now reviewed the briefs of the parties, and the law on the issue of the enforcement of the tax liens. Although hinted at in its briefs, the IRS failed to squarely address an important issue that was discussed in two cases cited in the IRS' brief to Judge Pusateri, but which Judge Pusateri did not decide. This Court believes it important to give the parties guidance on this remaining legal issue, to assist in the determination of value. The issue is whether the liens in question can be enforced other than through the IRC 6331 levy process, such that the liens do in fact have value.

As the Supreme Court has noted, the IRS has a considerable arsenal of collection tools, the purpose for which is to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting. *See United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). The government can, among other remedies, file a lien foreclosure suit in a district court of the United States to enforce a tax lien under IRC 7403, it may simply sue the taxpayer, then later pursue the usual rights of a judgment creditor, or it can exercise certain administrative rights, such as a levy under IRC 6331, which unlike IRC 7403, does not require any judicial intervention,

---

**1.** Hereinafter, references to Title 26 will be cited as IRC, to clarify reference to the Internal Revenue Code instead of the Bankruptcy Code.

and requires the taxpayer to go to court to stop the levy if the taxpayer claims the amount is not really due.

Because there is no judicial protection for the taxpayer if the IRS chooses the administrative levy collection route, Congress put restrictions on what property could be levied and immediately seized. Those restrictions are the exemptions set out in IRC 6334. But those exemptions so carefully set out in IRC 6334 are conspicuously absent in IRC 7403. As the Sixth Circuit Court of Appeals noted in *American Trust v. American Community Mutual*, 142 F.3d 920 (6th Cir.1998), exemptions make sense in an administrative levy proceeding, where no court has found that taxes are even due. Conversely, the need for the exemptions set out in IRC 6334 is removed when IRS seeks to enforce its lien judicially, under IRC 7403, as such a proceeding has different characteristics, including judicial involvement prior to the enforcement of the lien, and retention by the taxpayer of the property in question until a final determination on the merits. *Id.* at 925. *See also* IRC 7403(c).[2] Thus, IRC 6334 exempts certain property from a levy, but not from the judicial enforcement of the tax lien under IRC 7403.

For that reason, the Sixth Circuit in the *American Trust* case found that the exemptions applicable if IRS was seeking to levy on insurance commissions exempt under IRC 6334(a)(7) were not applicable in an interpleader suit brought against the taxpayer and the IRS regarding those same insurance commissions. Thus, although IRS could not affirmatively seize those commissions if it chose to levy under IRC 6331, it could assert an interest in those same commissions, if IRS chose a different enforcement mechanism or, as in *American Trust*, was forced into another enforcement mechanism by a third party interpleader suit.

Similarly, the Fifth Circuit in *Sills v. United States*, 82 F.3d 111 (5th Cir.1996), a Chapter 13 bankruptcy case, had to decide whether IRS could assert a secured claim that included the value of a house that had been purchased with worker compensation payments, which payments were exempt from levy under IRC 6334(a)(7). Like the Debtors in this case, the Sills argued that because IRC 6334 did not allow IRS to levy against and seize those worker compensation payments, the house purchased with such payments had no value to the IRS. The Court, relying on the Ninth Circuit *Barbier* case, and the Seventh Circuit *Voelker* case, both cited by the government in its brief,[3] reiterated that even if the house was exempt from *levy* under IRC 6334 because of the source of funds used to purchase it, the tax lien was still enforceable by the myriad other collection mechanisms available to the government, including a judicial foreclosure action under IRC 7403.

 Accordingly, the lien in this case is similarly enforceable by the IRS through other collection mechanisms, outside of bankruptcy of course. Under 11

---

**2.** IRC 7403(c) provides, in pertinent part, that "The Court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States."

**3.** *United States v. Barbier*, 896 F.2d 377 (9th Cir.1990) and *In re Voelker*, 42 F.3d 1050 (7th Cir.1994).

U.S.C. § 1325(a)(5),[4] the present value of each secured claim must be paid over the life of the plan, unless the creditor agrees to other treatment or the secured property is surrendered to the creditor. The amount of the secured claim is determined under § 506(a).

Because this Court finds that IRS' lien has value, albeit not under IRC 6331, but as a result of other enforcement mechanisms, the issues remaining are 1) what is the value of the IRS' secured claim, and 2) with that value, is this Chapter 13 plan confirmable, assuming Debtors wish to amend their plan to pay that value? Debtors, in their original schedules filed under oath and dated April 11, 2002, valued the personal property at issue at $10,000 for household goods and $1,500 for wearing apparel. Upon learning that IRS was claiming a lien against that property, Debtors amended their Schedules B and C on December 17, 2002, and reduced, by nearly 90%, the value of the same property that only months earlier had been valued at $11,500. Debtors claimed the property was then worth only $1,500 ($1,000 for household goods and $500 for wearing apparel). (Doc No. 29)

The government protested that such amendment was in bad faith, as the Debtors provided no explanation how the property could have so precipitously declined in value over such a short period of time. Apparently in response to that objection, on February 26, 2003 (Doc No. 42), Debtors withdrew those amended schedules. *See also* Doc. No. 47, Order of Withdrawal of Debtors' Amendment to Schedules B and C. Accordingly, Debtors' sworn schedules remain the only indication of what they contend the value of the property is— $11,500—in light of the Court's view that

the IRS lien is in fact enforceable against that property. IRS' secured amount on its Proof of Claim is $8,009.80 (*see* Proof of Claim No. 12), and therefore at first blush, it appears IRS is fully secured, and that pursuant to § 1325(a)(5), the plan must propose and be able to pay this $8,009.80 or it cannot be confirmed.

IRS contends that after its appraisal, it agrees the property is actually worth only $7,000 (Doc. 64), and therefore has consented to its secured claim being valued at $7,000, not $8,009.80 as stated in its claim. Since the taxes secured by these liens do not qualify as a priority claim pursuant to § 507(a)(8), due to their age, the remaining amount not secured—approximately $1,009, will apparently fall to an unsecured general status.

■ But because this Court has now provided this guidance regarding the enforceability of the IRS' liens other than through levy, and Debtors and their counsel have not had an opportunity to consider the Court's view on that matter, the Court believes Debtors should be allowed, if they so choose, to present evidence that the true value of the personal property collateral is, in fact, less than $7,000. Or, alternatively, the Debtors can satisfy the Code by surrendering 100% of the personal property collateral to the IRS (with the exception of the vehicle, which is apparently secured to a third party), pursuant to § 1325(a)(5)(C). The Court wishes to also give the Debtors an opportunity to consider that alternative, as pleadings filed in this case suggest that is one possibility the Debtors have considered.

This matter is presently set for hearing **July 30, 2003 at 1:30 p.m.** The purpose of this Order is to give the parties advance

---

**4.** All future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., unless otherwise specified.

notice of the Court's guidance on the valuation issue, so that at that hearing, the Debtors, through counsel, can be in a position to inform the Court of the following:

1) Whether the Debtors intend to oppose the IRS' valuation of $7,000 with evidence of what Debtors contend is its true value in light of this Court's guidance that the liens on the property do in fact have a value [because of the IRS rights to collect other than through an IRC 6331 levy]. In other words, do Debtors want this Court to conduct a valuation hearing which, if requested, is tentatively set for **August 28, 2003 at 3 p.m.**, or

2) Whether the Debtors intend to amend their plan[5] to pay for the $7,000 secured claim with interest, as well as to pay the $5,605 unsecured priority claim of the IRS, which does not appear to be provided by the current plan, but which has not been at issue during the dispute over IRS' secured status; or

3) Whether the Debtors intend to surrender the collateral to the IRS.

The Court will also provide the parties an opportunity to brief the issue upon which this Court has herein given this guidance:

> Whether, because the IRS has lien enforcement rights other than through an administrative levy under 26 U.S.C. § 6331, its lien does in fact have value in an amount to be determined under 11 U.S.C. § 506.

Again, the government's brief suggested that result, but Judge Pusateri did not address or decide that issue in his finding that the liens could not be enforced under levy. Any brief on this issue shall be filed

by **July 28, 2003.** Although the Court's own research indicates the answer, because the parties have not specifically focused on this issue, the Court welcomes whatever legal argument or authorities the parties wish to present on this issue. The parties should not, however, re-brief matters already submitted to the Court for consideration.

---

**5.** The Court, by this statement, does not suggest that it has determined any particular amendment to the plan would be feasible, in light of Debtors' income and expenses. The Court does note that Debtors' Schedule J reflected excess income of $715 per month, with a plan payment of only $270 per month, leaving $445 per month for payment of additional debt.